The next argument is in Appeal No. 05-3353, Sickler v. Department of Veterans Affairs. Mr. Onge, good morning. Welcome back to the court. Please proceed. Am I correct, by the way, that there's no gray brief filed here? You filed the initial blue brief, but not a gray brief. All right, just wanted to be sure we're not missing anything. Please step forward and begin your argument. May I please step forward, counsel? I'm representing, in this case, the petitioner Cheryl Sickler. Let me try to make this as clear as possible in terms of my position. The way I see this case, it boils down to one simple issue, and that is that the court, once you reach, and I'm referring to the administrative judge, at the American Citizens Protection Board local level... Let me see, I just want to be sure I understand what her contention is. She says that during this period of three and a half months, when she was in leave without pay status, that was, in fact, an involuntary suspension. That is correct. And, therefore, she should have gotten paid during that period. The involuntary suspension was improper because it was involuntary, and, therefore, she should have been treated as though she were on leave with pay status during that entire period. That's her argument. That's her argument, and she filed an appeal to correct that, and the board dismissed the appeal by making a credibility call that she initiated leave, and, therefore, the leave was not involuntary, so, therefore, there was no enforced leave. I thought the administrative judge ruled, essentially, as a matter of law that her election to go on leave was voluntary on its face and had no contrary indication because her only other options were to resign or be fired. She couldn't do her job, and, therefore, her choices were be removed for being AWOL or refusing to do your job, quit your job, or go on leave, and she went on leave. So, if those were the three alternatives, how can her going on leave be other than voluntary? It was her best option of three unattractive options, so, of course, she chose the least unattractive option, so, of course, it was voluntary. Well, no, I disagree, Your Honor. She has rights as an employee. For example, the Rehabilitation Act, which applies to a federal employee, provides for an accommodation when an employee has a physical or mental condition that we mentioned. There's something I don't quite understand about this. In your brief, you keep saying she was willing to return to work. You say that. Yes. But it turns out she's not really willing to return to work. She's willing to return to work, not to her old job, but to some limited duty job. Is that correct? Which, yes, which was the job she was performing up to the day that she was told she couldn't. But that's not her position. Her position is not an audiology assistant. Her position to which she was appointed is a nursing assistant, the job that requires the heavy lifting of patients. That's the precise thing she says she can't do. That is correct. So she can't perform the duties of the position to which she's appointed. The only duties she can perform and was performing were to a different position, so that your argument has to reduce to saying she has a right to a position as an authority. She was hired as a nursing assistant. And she does. Under what authority? Under the Rehabilitation Act. You have to be more specific. Under the contract that is quoted in my brief. Let's start first with the Rehabilitation Act. If she is disabled, regardless of whether it's a result of on-the-job injury or not, and she asks for an accommodation, which she did, then the government, the agency has an obligation to... I'm not so sure you're right, because the language of that section says that she has to be qualified to do the job. This job involves heavy lifting, and she can't do heavy lifting, so she's not qualified to do the job of a nursing assistant. She was performing the job of a medical support assistant at the audiology department. I don't think that's right. What she did in the audiology department was audiology, not lifting patients. Her job is to lift patients. That's the job position she holds. She will never be able to lift patients, based on what she's represented throughout the proceedings. Okay. So it comes down to the question of whether she has some kind of a right to be appointed to a new and different position as an audiology assistant. I think that the Rehabilitation Act entitles, gives the employee the right to be accommodated. But it says in his or her job, but she wants to be accommodated by being given a different job. Well, she had already received that job as part of her OWCP case. She had been given an offer for that job, which she had to accept or reject. The fact that the veterans department let her function as if she were an audiology assistant for some period, doesn't mean that they're legally obligated to continue to have her work as if she were an audiology assistant. If we were to agree with the court's interpretation of what the Rehabilitation Act requires, then very few people will actually be able to be accommodated. And how, I think that we have to look at how burdensome was or economically impossible for the Department of Veterans Affairs to, I'm sorry, for the hospital, because it was in the hospital, to actually allow her to work as a medical support assistant. There has to be a balancing between the condition the employee has and the request. That is the goal of the statute, not just to label it. But this case comes up in a peculiar context, doesn't it? Because what happened is she was out of work for a long time because of injuries she had suffered, and now she comes back. And as I understand what happens is she, first of all, the Office of Veterans Affairs, comes back and says, I'm ready to go to work. And they say to her, okay, you're ready to go to work, here's your job. And then she says in effect, well, I can't do that job because I can only do a limited duty job. And they say to her, well, if you can only do a limited duty job, you need some more documentation, some more medical evidence to support that. And if you can come up with some more medical evidence, we'll see what we can do. But in the interval, we have no place that we can put you on a limited duty job while you're getting that medical documentation. And then the next thing that happens is first she uses up her sick leave, and then she goes on leave without pay. That's actually what happened in this case. She never said that she could do her job. She was approached and told while she was still on the limited duty job that the OWCP had found her fit for duty. She never said she could do her job. She said, well, I can't do that job, and I need to provide more information and medical documentation. And she did provide the documentation. She never said she could do that job from the beginning. But didn't she come back saying she was prepared to go back to work? No. When she returned to actual physical work as a result of the offer that was made to her through her OWCP case, that's the time she came back to work. She never came back to work after she was changed from on April 14, 2003, and told she had to report to her regular nursing duties. She never came back. She waited. And in fact, the record shows that her, in fact, condition were legit, and eventually they accommodated her. Now, in terms of whether, in fact, a point that your Honor made, whether, in fact, the agency didn't have any light duty assignments, I question that, you know, whether that's actually true. She was actually doing a job before they moved her. Light duty assignments in the position of a nursing assistant, or light duty assignments in some other position? In the position that she was performing, other position. She was doing a job until April the 14th. Was she, was she was seeking? In any other position, to make sure that I answer your question. She was seeking a temporary light duty assignment? She was seeking, she assumed that she would continue to receive the accommodation she was getting from, as a result of her injury at work. The light duty she sought, that was just temporary period or permanent? Based on the record, I assume she expected this to be permanent. So she's in effect saying that she has a right to be reappointed to a different position, one that didn't involve any lifting. That is correct. That's what she was seeking. But at the very least... But she's not, she's not just asking for it, she's saying she's legally entitled to be given it, that they must give it to her. I think that she, if the court has a problem with the actual language of the Rehabilitation Act, at least the spirit of the act supports her position. Also, your honor, the union contract that she signed supports her position. Also, the agency... Whoa, whoa, whoa, don't go so fast. What specific language in the contract gives her a right over and above the Rehabilitation Act rights? The contract cites the Rehabilitation Act, you're correct. So it just repeats the same thing. It doesn't change anything. It doesn't add anything. Well, the contract reads, and I'm quoting from page 23 of my brief, employees recuperating from serious illness or injury and temporarily unable to perform their assigned duties as certified by a physician may I apologize. I realize that that doesn't deal with it. The other point that I wanted to make, your honor, is that the agency at no time said that they could not accommodate her, that it was burdensome. They explicitly said that they chose to deny her that position, and I quote it. But that just means that we're back to the title to be accommodated by being put on other duties so that the agency has no choice. The agency's view is they do have a choice. For a while, they accommodated her, and then they changed their position and chose not to further accommodate her. She's saying they don't have that choice. They had to continue to accommodate me in just the same sort of fashion. Yes, but I agree. But in addition to that, there is an interesting point here, and that is that at the end of the day, her injuries were in fact supported by the medical evidence, and the agency agreed to accommodate her again as part of her OWCP case, yet the agency didn't pay her back her back pay. All right, I think we have your case clearly in mind. Let's hear from the government. Mr. Huntington. May I please report? Good morning, Your Honor. Good morning. You said something in your brief which is very interesting. You said that the board correctly found that there were no other positions available. Now, what's the basis of saying the board correctly found no other positions were available? What do you mean by that? The board properly determined that she did not make a allegation of jurisdiction would be the correct statement. If there's a misunderstanding, I apologize for that, Your Honor. Well, I thought what you said is quite different than what you're now saying that you said. The agency said we don't have any light work. We don't have any alternatives for this lady, and you said that the AJ, the administrative judge, correctly so determined. And I'm trying to figure out what's your basis of saying it was correct? What proof was there that they had no other jobs for her? They said so, but what proof? The determination of Mr. Berrettini. It's just a statement in his letter that the agency has no positions for her. It's just a nothing behind it. It's a notation of fact based on the record. Correct, Your Honor. What do you mean a notation of fact based on the record? I don't know what that means. There's an assertion in a letter by a VA official that says there are no other jobs for her. Correct, Your Honor. Mr. Ange seems to be disputing it. He's saying it's a big hospital. They've got lots of other jobs and later gave her jobs that don't involve heavy lifting, so therefore why wouldn't they look after her in the same fashion for the four months when she was on unpaid leave? Because at any given time there's not always light duty positions which are available within a VA hospital. The nature of the business is it is a heavy work position. It's difficult to do the work of a nursing assistant. Would you also say that in that situation the burden was on her to show other jobs that she could have been given rather than the agency to prove the correctness of the statement that it had no other jobs? Yes, Your Honor. We did not have another job and there was no other position that was available at the time. But the important part to look at and to focus on, and Your Honor is hitting upon this, is she's cleared for duty by the Department of Labor and that's where we have an agency action. There's a conclusive finding which she's given notice of in February of 2003 that she's going to be returned to full-time duty because based upon the medical evidence of Dr. Yanov, she in fact has recovered from her her problems back a year earlier. There is a determination of fact that her claims which she's coming back to the VA when she returns to work and saying I have this other condition, brachial plexus neuritis, which you know I still should be accommodated for. Well specifically in the Department of Labor's finding they determined that no you don't there's subjective reports that you have that disability but in fact Dr. Yanov finds he looks at the x-rays, he looks at the MRIs, and he looks at the diagnostics and it's in our supplemental appendix. It's noted on page 26 and the determination is made so when she comes back she's in effect trying to collaterally attack that decision. I mean her problems as stated by Dr. Gross are that she's saying I have this new condition. Well she's saying it's not really a new condition when she's coming back when she's cleared by labor is noted by the MSPB. She's saying I have something, brachial plexus neuritis, which has already been ruled out by the Department of Labor and I also have stress related to the workers' comp process. Again, her complaints don't focus to the Department of Veterans Affairs. They're the determination of Department of Labor. Mr. Huntington, on the simple facts, just for understanding the work at the Wilkes-Barre VA Hospital? Based upon the evidence of record, I don't have an answer, Your Honor. But she was re-employed after three and a half or four months. As I understand it, she then came back to work full-time, didn't she? She did come back. In what position? As a nurse's aide. On light duty or doing the heavy lifting of big veterans? She was cleared for doing heavy duty. So apparently at that point, whatever the problem was earlier was totally resolved. Was totally resolved and different. And as you can see... Pardon? Yes, she had different issues. As of June of 2003, Dr. Gross reports that she had injuries sustained in a fall coming out from church and she had other issues. But there are no reports related to the brachial plexus which was rejected by the Department of Labor or what she actually went out for as her accommodate... She was accommodated for tendonitis. Let me focus on something else in the case, the main issue. The question as it comes to us is whether she was involuntarily suspended from work when they put her on leave without pay. Suppose for the sake of argument, one were to conclude that the VA had some obligation when she came back to find her a limited duty assignment. Let's just assume that for the sake of argument. Would you agree that in that situation there was an involuntary suspension or would you say no? I'm trying to put the case in the context that the VA didn't do what it should have done for her and instead said to her, I'm sorry, we can't give you the thing you're seeking and therefore you can't continue to draw your salary. Would that be an involuntary suspension? The reason that bothers me about it is I think it's either in the statute of the regulation defines suspension, doesn't it, as a disciplinary step? Correct, Your Honor. And this was clearly not disciplinary. This was an attempt to adjust the situation as best they could for her. That's correct, Your Honor. But if we had the duty, if we had the obligation, and I think your hypothetical would be if the situation is like if she had the OWCP disability and we were required to accommodate her or if she had some everything she claims, would you still say there's no constructive suspension because a suspension has to be for disciplinary purposes under the definition? Correct, Your Honor. And there's no suspension. There's no action that's made by the VA. If there's any action that's been made here, it's by the Department of Labor saying you're cleared to go back to work and it's a conclusive finding because she didn't dispute that. She was represented by counsel at that point in time and Labor notes that, page 24, 26, and they told her what her appeal rights and by statute, as noted in the Williams case cited in my brief, by statute under 5 U.S.C. section 8128B, the Department of Veterans Affairs, no officials can dispute that. That's a conclusive finding as no court can dispute that finding. Her condition as it came back, neither the VA could Why do you say that? I don't quite understand why the Labor Department determinations have to be treated like court judgments. You're talking about collaterally attacking the Labor Department's findings and so forth. I don't understand that. I thought the Labor Department simply operates a worker's compensation system for on-the-job injuries and as long as they continue, pays money in lieu of the salary that the employee would otherwise get and that whether somebody's able to do their job or not, it doesn't necessarily turn on whether they're entitled to workers' compensation payments as determined by the Department of Labor. An excellent question, Your Honor, and what it points to is... What's the answer? The answer is what is she attempting to do when she comes back to work? She's not attempting to go back to, as you noted, she's not trying to get her full-time position. She's trying to get the position in audiology. Let me try to ask you a hypothetical. Suppose that I have an injury, Labor pays me the workers' compensation, I recover from the injury, I go back to work, and the next day I fall down the steps and get all totally bashed up and can't do my job. Now, when I present medical evidence to my supervisors that I can't do the job, can they put me on leave without pay? On the grounds that, well, the Labor Department has already previously ruled you're able to go back to work, obviously under a different set of facts. Certainly, and that situation would be a different set of facts. What's the difference here? I thought the whole point was she had a new and different injury that arose after the injury that the Labor Department had adjudicated. It's not a different injury in her own words and in the report of Dr. Gross. Remember, he states in the medical documentation she ties all of her problems to lifting a box at the office in 2001. That's in Dr. Gross's report notes when she comes back to the office on April 7th. I had understood, maybe I'm totally wrong, I had understood that she had a new and different off-the-work site injury subsequent to the original 2001 injury on the job and its 2002 aggravation on the job. Is that wrong? There's only thing, the only thing which I see from a review of the record that may be new and different is she reports stress, stress related to the workers' comp process. She's stating... I'm talking about physical problems. The physical problems are the same problems which have already been... Well, what about this business of falling at church? That's subsequent to the time period where that's in May of 2003 where she fell at church and she notes that in a... Well, what are the months that she was not paid, the three and a half months she was not paid? When are they? April. It's within that time frame, April to August. Well, then why doesn't the fall at church support the idea that during the four months in which she was not paid, she couldn't work because she had a new injury? It could if there's a submission, but as she has even alleged, she had never made a report to her supervisor requesting leave other than one request which was made. So there's no communication evidence in the record because she... And she acknowledges within her declaration that I only made the one submission request for leave, whether it be with pay, without pay, or otherwise. I don't understand what you're saying. Did she not tell her employer about the injury resulting from the fall at church in April of 03? No, that's not in the record. It's in the report notes of Dr. Gross that she had some separate injury, but that's not what she was claiming and that's not what she showed her the notes of Dr. Gross and the requests were tied to her original injury. And she's just coming back again and saying, I still have the same injury. I've got plenty of medical documentation for you. Why I say that's disingenuous is that it's attacking what the determination was by the Department of Labor and under 5 U.S.C. section 8128 and as noted in the MSPB precedent, Williams cited in our brief. That's a determination that cannot be subject to review by another official by the United States or by a court by mandamus or otherwise. Isn't the real question before us whether the allegations in her complaint before the board were sufficient to entitle her to a hearing on the jurisdictional question, which may be equivalent to a hearing on the merits. Isn't that the real question? She says that I was ready to go back to work and they had an obligation to give me a light duty job and at the very least I was entitled to have a hearing on that before the board. The administrative judge shouldn't have just thrown me out saying you haven't made a non-frivolous allegation of jurisdiction. Certainly that's what Ms. Sickler has requested and that is the issue is whether she's entitled to a hearing. Here the MSPB has looked at the allegations. What are the allegations? Where do we find them? How can we assess whether the allegations are non-frivolous if we can't look at some text and see what the allegations precisely say? Well, her allegations as best I can see is that I had a right to come back to the light duty position. No, no, no. What did she file? What was the administrative judge reacting to when she made the finding that the allegations are frivolous? What allegations was she adjudicating? She, the administrative judge. She is looking for a suspension or some type of involuntary action by the agency. No, no, no. But what had Ms. Sickler alleged in the paper she filed before the administrative judge? She had alleged that she's basically entitled to go back to the position of the light duty. She filed a piece of paper, right? Correct, Your Honor. Where is it? Where is it in the appendices you've given us? The allegations which the AJ is looking at to determine if there's a non-frivolous allegation? Yes. She's looking at the appendix that she's filed, not the supplemental appendix. And what she's really looking at is the declaration which is made by Ms. Sickler. Which basically says... Where is that? That would be at pages 42, 43, 47. 42 and 43 of what? Of the appendix. No, but that's not in your printed appendix, is it? That's the administrative record. This is the copy that I received from Mr. Ongai. Which may be on file in the clerk's office. We don't have copies of that. All we have is a printed document. Why don't we have a proper appendix in this case? That has the core documents, so we can assess what the AJ was reacting to. This was served on me by Mr. Ongai, and I would assume that you had... Well, here's the... We don't have anything. Where in this appendix do I find her complaint before the board, if anywhere? What you find, Your Honor, is her response to a show cause order. And at page 41, there's a declaration which details... So you're talking about A41 in the separate appendix? A41. Okay. That's all the AJ had before her? The declaration of Ms. Sickler herself? Well, she had the declaration of the agency, but she was looking, in her words, she was focused upon the allegations which were made by Ms. Sickler in her response to the show cause order. That's what she's truly looking at. That's all she responded with, her own declaration? There's other attachments to it that are also included within Mr. Ongai's... the appendix file, Mr. Ongai. All right. Very well. That's a help. Thank you. I have one additional question. In your brief, you state a couple of times that she voluntarily or asked to be put on leave without pay, right? Yes. And I'm just wondering, what is the basis of that allegation? Is there any document? I didn't see any in the record in which she said, please put me on leave without pay? Or is this just an inference you drew off from all the circumstances that, as Judge Bichelle had said earlier, this was the most attractive of some unattractive choices? Correct, Your Honor. The judge, the MSPB judge, from my review of the record and the opinion, thinks she's focused on the declaration. And the request is in there. I mean, there is at the end. She makes a conclusory statement that I didn't want to be on leave. I didn't want to be on leave without or LWOP, leave without pay. But she states in it... Does she say, I'd like to be on leave without pay in her declaration? She says, I want to be on administrative leave or something. It was her response at page 43 when she had a discussion with the agency. And she's saying, basically, I want to be on paid leave. I want to be on some administrative leave or something. And she also acknowledges in her declaration that she did file. And there is, at the time she goes on leave, one leave slip. And a record in her declaration states that I only filed one leave slip. And that was it until the point in time when I came back. All right. Thank you, Mr. Onge. Thank you, Your Honor. Do you have any rebuttal? Up to about two and a half minutes. In terms of the medical records, my client provided medical records as outlined on my brief on April 7th, April 24th, and June 13th. No other medical records were ever provided. And none of those records ever says that she's fit for duty. All those records have been requesting an accommodation. So where does the agency get the idea that my client came in fit for duty after providing documentation? I do not understand. Also, the brief by the government, the agency, page 8 says approximately three months later, comma, upon receipt of additional documentation that indicated that Ms. Zickler was able to perform the duties of a medical support assistant, Ms. Zickler was returned to duty, effective August 4th, 2003. No records were submitted to the agency three months into the case at all. All right. Thank you. I'll take the case under advisement.